## 9115

WHITWORTH v COLUMBIA, NEWBERRY & LAURENS RAIL-
ROAD CO.

(85 S. E. 402.)

CARRIERS AND PASSENGERS. ISSUES. DIRECTION OF VERDICT. DISCHARGE OF
PASSENGERS. CONTRIBUTORY NEGLIGENCE. PROXIMATE CAUSE. CHARGE.
CONSISTENCY.

1. CARRIERS AND PASSENGERS—DISCHARGING PASSENGERS—ISSUES.—Where
the testimony tended to show that an unusual number of passengers,
of which the conductor had notice, were to leave the car in the dark
at a station, and he thought they were getting off on both sides of
the car, as was customary, though the regular landing place was
on one side only, and before six passengers, moving with reasonable
promptness and celerity could alight, the conductor, without observ-
ing closely to ascertain whether all passengers to disembark had
done so, signalled the train forward, and it moved with a sudden jerk,
which threw plaintiff, who was in the act of alighting from the train
with a number of other passengers on the side opposite to the
regular landing, where the conductor stood, to the ground and
injured her, the direction of a verdict for the defendant carrier was
properly refused, and the issue as to the carrier's negligence sub-
mitted to the jury

2. CARRIERS AND PASSENGERS ALIGHTING FROM TRAIN—CONTRIBUTORY
NEGLIGENCE.—While there was no evidence of an invitation to a
passenger to alight from a train at other than the regular landing
place, but where passengers were accustomed to alight with the
knowledge and acquiescence of the carrier, the issue as to whether
or not passenger was guilty of contributory negligence in attempt-
ing to there alight, was properly submitted to the jury.

3. CARRIERS AND PASSENGERS—STOP AT STATIONS—NEGLIGENCE.—A charge
that a failure to stop a train a reasonably adequate length of time
for passengers moving promptly and with due diligence to get off,
even if they were attempting to get off on the wrong side, where
the conductor knew or should have known they were, is negligence,
approved.

4. CARRIERS AND PASSENGERS—INJURY IN ALIGHTING—PROXIMATE CAUSE.
—A charge that a plaintiff's negligence, if any, in getting off on the
wrong side of a train, would not defeat recovery of damages, if she
would have met the same fate on the other, approved as upon proxi-
mate cause.

5. CARRIERS AND PASSENGERS—PASSENGERS ALIGHTING—PROXIMATE CAUSE.
—A charge that the distance between car steps and the ground
could have no effect, unless the cause of injury; was not prejudicial
to the carrier.

6. CARRIERS AND PASSENGERS—CHARGE—CONSISTENCY.—A charge submitting to the jury the issue whether a train stopped at the usual and prepared stopping place, is not inconsistent with a charge that there was no evidence that it stopped before it reached the station.

Before PRINCE, J., Columbia, April, 1914.    Affirmed.

Action by Sallie Whitworth against Columbia, Newberry & Laurens Railroad Company. From judgment for plaintiff, defendant appeals. The facts are stated in the opinion.

*Messrs. Lyles & Lyles,* for appellant, submit: *There was no evidence of carrier's negligence, as alleged in complaint:* 33 S. C. 198; 45 S. C. 278; 57 S. C. 433; 76 S. C. 557; 89 S. C. 378. *Stopping at flag station:* 72 S. C. 442; 73 S. C. 273; Civil Code, secs. 3225 and 3269. *Duty to stop sufficient time for passengers to alight:* 67 S. C. 61-65. *No evidence that rain stopped before reaching station:* 16 S. C. 1; 19 S. C. 491; 31 S. C. 138; 68 S. C. 526; 83 S. C. 504. *Notice to alight at prepared place:* 72 S. C. 114. *Voluntary attempt to alight at other place:* 25 Am. Rep. 255-259. *Prepared place for alighting:* Civil Code, sec. 3269; 81 S. C. 271-274; 80 Ind. 168; 31 Pac. 901; 53 L. R. A. 149; 89 S. W. 528; 41 N. E. 952; 56 S. E. 518; 15 Lea (Tenn.) 628; 9 So. 349. *Contributory negligence; tests of:* 80 S. C. 1; 90 S. C. 414; 88 S. C. 554. *Passengers acted without invitation from the carrier, at suggestion of fellow passenger:* 25 Am. Rep. 255; 72 S. C. 114; 16 Atl. 353; 27 S. W. 860; 87 Am. Dec. 668. *Contributory negligence as matter of law:* 58 S. C. 495; 81 S. C. 100; 85 S. C. 219. *Inconsistency in charge:* 11 Enc. Pl. & Pr. 145-149.

*Messrs. A. F. Spigner, W. H. Cobb* and *Jas. S. Verner,* for respondent, submit: *As to stopping train before reach-*

FOOTNOTE.—As to duty to see that passenger has alighted before starting train at station, see note in 25 L. R. A. (N. S.) 217.

*ing station:* 61 S. C. 357; 77 S. C. 377. *Failure to furnish* *safe place to alight:* 92 S. C. 177; 85 S. C. 30; 57 S. C. 332; 58 S. C. 494. *Time for stop:* 86 S. C. 526; 87 S. C. 314; 67 S. C. 61. *Standard of care:* 90 S. C. 414. *Contributory negligence a question for jury:* 46 S. C. 203; 81 S. C. 271. *Proximate cause:* 76 S. C. 202. *Presumption* *of negligence when passenger is injured on train:* 88 S. C. 223.

May 27, 1915.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This appeal is from a judgment for $5,000.00 damages for injuries sustained by plaintiff while alighting from one of defendant's trains on which she was a passenger from Columbia to Ballentine, a flag station on defendant's road.

The specifications of negligence are: 1. In stopping the train before it reached the regular stopping place, in inviting plaintiff to alight where the train was stopped, which was not a safe place, because the ground was rough and the distance from the step to the ground was too great for plaintiff to alight in safety, without the aid of a stool, which was not furnished, and without light to enable her to see how to get off, which was not provided. 2. In causing the train to be moved forward with a sudden jerk, while plaintiff was in the act of getting off, and before sufficient time had been allowed for her to get off.

Defendant denied the allegation of negligence, and charged plaintiff with contributory negligence in getting off on the wrong side of the train, where no landing had been provided, when she knew there was a suitable landing on the other side, where the conductor and porter attended with their lanterns to assist passengers in getting off.

The proof showed that defendant had provided a suitable landing for the distance required by statute on each side of the umbrella shed, which was on the right going from

Columbia to Ballentine, and it tended to show that it extended as far as the end of the car where plaintiff got off. But she got off on the opposite side, though she got on the train that morning going to Columbia from the landing on the side next to the shed.

There were twenty or more passengers on the train that night for Ballentine. The station blow and stop signals were given, and the porter called the station. When the train stopped, Mr. Shealy, who was in the car with plaintiff, suggested that, as there was a large crowd to get off, they go to the rear end of the car and get off, and thereby avoid the rush. Accordingly, he and his wife, son and daughter, plaintiff's sister and her husband, and plaintiff went to the rear of the coach, plaintiff being next to the last, her sister being last. The testimony tends to show that they went out promptly; that those in front got out safely, but just as plaintiff was on the bottom step, in the act of stepping off, the car was moved forward with a sudden jerk, and she had to jump to keep from being thrown down; that Mr. Shealy, who was assisting her off, caught her in time to keep her from falling and she landed on her feet, but the sudden jar caused the injuries of which she complained. Her sister testified that she was standing in the door of the car, and that the jerk was so sudden and violent that it nearly threw her out of the car. She failed to get off and was carried on to the next station, and returned to Ballentine on the next train.

The conductor and porter were on the opposite side. The conductor said that he saw passengers get off all along on that side, and that, as sufficient time had been allowed for all to get off, and none were getting off on his side, he signalled the train forward.

There was evidence that, at Ballentine, it was customary for passengers to get on and off the train on either side, and that this was done with the knowledge and acquiescence of the company. Some of the witnesses said they had seen

as many get on and off on one side as on the other, and one or two testified that they had seen the conductors help ladies off on the side on which plaintiff got off.

It is clear from the foregoing statement that the tendencies of the evidence, that defendant's motion for a directed verdict was properly refused. The Court could not have held, as matter of law, that the train stopped a sufficient length of time for all the passengers, exercising due diligence, to get off safely. Nor could the Court have held that there was no evidence of negligence on the part of the conductor in signalling the train forward, under the circumstances, or on the part of the engineer, in moving it with a sudden jerk. Considering all the circumstances,—the unusual number to get off, of which the conductor had notice, for he had taken up their tickets, the custom of passengers getting on and off on both sides at that station, which the engineer said he had observed daily, and of which the conductor did not deny knowledge, but, on the contrary, admitted that, on that occasion, he thought they were getting off on both sides, and he did not observe closely, and could not give even an approximate estimate of the number that got off on his side, the fact that it was in the night and at a flag station, where there was little or no light, except that afforded by the lanterns of the trainmen and the lights in the cars, and the evidence that the six persons with plaintiff, moving with reasonable promptness and celerity, were not all able to get off before the train was started, and the evidence that it was started with a violent jerk, the issue of negligence was properly submitted to the jury.

Nor could the Court have held, as matter of law, that plaintiff was guilty of contributory negligence in getting off on the wrong side. What has been said with reference to the custom of the passengers getting on and off on both sides, with the knowledge and acquiescence of the company, applies to this contention. While there

was no evidence of a direct or special invitation to get off on that side, the Court properly left it to the jury to say whether an implied invitation to do so should be inferred from the circumstances, just as the constant and long continued use of the track as a walkway, with the knowledge and acquiescence of the company, may warrant the inference of an invitation to so use it. *DuBose* v. *R. R. Co.*, 81 S. C. 271, 62 S. E. 255.

The remaining exceptions complain of alleged errors in the charge, which is too long to report in full. But when it is considered as a whole, it was not erroneous or misleading. The jury were instructed that it is the duty of a railroad to stop its train at stations where passengers are to be let off for such reasonable length of time as may be necessary for those who move with reasonable promptness, diligence and care, to get off in safety; that when such time has been allowed, the conductor may order the train forward, and if a passenger is in a position of danger at that time, the railroad is not responsible for resulting injury, unless the conductor knows, or ought to know, of his danger; that the length of the stop should vary according to circumstances; that if defendant did not stop a reasonably adequate time to allow the passengers to alight in safety, it was guilty of negligence, and that would be true, even if the passengers were getting off on the wrong side, if they were exercising due diligence in getting off; that the company was required by statute to prepare a suitable landing on one side only—that next the station—and every passenger is presumed to know that, and has no right to alight on the other side of the train, without assuming the risks incident thereto, unless he has been notified by the company to do so; that the fact that a few persons may get on and off trains on the wrong side, with the knowledge of the company, does not amount to an invitation to do so; that it would require such constant practice as would satisfy the jury of an implied invitation to do so; that where the com-

pany actually or impliedly invites passengers to alight, it is under the duty of providing a reasonably safe place; that if plaintiff was negligent in attempting to alight on the wrong side, and she was thrown by an act of negligence on the part of the company, whether her negligence would defeat her recovery would depend upon whether she would have met the same fate, if she had gotten off on the other side; in other words, if the train was moved before the passengers had a reasonable time to get off, and if the moving of the train was the proximate cause of plaintiff's injury, then it would make no difference on which side she was getting off; that the fact of the step being some distance from the ground could have no effect, unless they found that the distance from the ground was the cause of the fall, or that the distance effected the result of the fall; that a passenger train must stop at the station; that does not mean that every coach must be opposite the station—a physical impossibility; that it was for them to say whether the train stopped at the station, and if it did, the defendant did all the law required of it in that respect   Later the Court charged defendant's request, that there was no evidence that the train was stopped before it reached its usual stopping place at Ballentine.

The first assignment of error in the charge is that it was charging on the facts to tell the jury that the failure to stop a reasonably adequate length of time for passengers, moving promptly and with due diligence to get off, even if they were attempting to do so on the wrong side, would be negligence.   The precise objection seems to be that this was a flag station, at which the statute, which prescribes the length of time for trains to stop at regular stations, does not apply.   But the instruction was in accord with the common law.   The failure to observe so plain a duty wherever passengers are to be let off is negligence.   It is further objected that this part of the charge was erroneous, in that it made the principle applicable, even if the

passenger was getting off on the wrong side. But it was not so made applicable, unless the conductor knew, or, in the exercise of proper care and diligence, should have known, that passengers were getting off on the wrong side. If he did so know, there is no reason why it should not apply.

The next assignment of error is in charging that plaintiff's negligence, if any, in getting off on the wrong side would not defeat her recovery, if she would have met the same fate on the other side. The objection is that it left it to the jury to surmise whether she would have met the same fate on the other side. Not so. It meant no more than to say that, if the sole proximate cause of the injury was the sudden movement of the car, the alleged contributory negligence of attempting to get off on the wrong side would not defeat recovery, for, in that contingency, it was not a proximate contributory cause.

The same may be said of the next assignment of error, that the distance from the step to the ground could have no effect, unless the jury found it was the cause of the fall, or that the distance affected the result of the fall. This instruction was favorable rather than prejudicial to defendant. Responding to plaintiff's charge of negligence in that the distance was too great for a safe landing, without the aid of a stool, the jury were told, in substance, that the distance could make no difference, unless it caused the fall or increased the injurious effects of it. In other words, if it had nothing to do with the injury, either in causing it or in enhancing it, defendant should not be prejudiced by the alleged negligent failure to provide a stool.

It is next contended that the charge was conflicting and confusing in that the Court first charged that it was for the jury to say whether the train stopped at the station, and subsequently charged defendant's request that there was no evidence that it was stopped before it reached the station. A moment's reflection will show that there was nothing conflicting or confusing in these instruc-

tions.   Plaintiff had charged as an act of negligence that the train was stopped before it reached the station, and she was thereby invited to get off at the place where it was stopped, at which there was no suitable landing.   The train was composed of six coaches.   As the Judge said, it was a manifest impossibility for each of them to be immediately opposite to the station shed at the same time, and clearly it was properly left to the jury to say whether it stopped at the usual and prepared stopping place.   There is nothing in that inconsistent with the view that there was no evidence that the train was stopped before any part of it reached the station grounds, which was the real meaning of the plaintiff's allegation, which defendant's request was intended to meet.

Judgment affirmed.